IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**TAHKIAZLYN MARIK JENKINS**                      **PLAINTIFF**

**V.**                      **NO. 3:20cv154-MPM-JMV**

**ANDREW M. SAUL,**
*Commissioner of Social Security*                      **DEFENDANT**

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the unfavorable decision of the Commissioner of Social Security regarding an application for supplemental security income disability benefits. [1]. Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, it is the report and recommendation of the undersigned that the Commissioner's decision should be affirmed.

### Background

The Plaintiff suffered an acute subarachnoid hemorrhage in February 2018, when she was a 20-year-old college student. Tr. 13. Following her surgery, she experienced a non-ST segment elevation myocardial infarction and severe vasospasm. *Id.* She also exhibited aphasia. *Id.* Upon discharge on March 26, 2018, the Plaintiff's aphasia had improved. She was transferred to Methodist Rehabilitation Center for comprehensive inpatient rehabilitation of functional impairments. Tr. 708-36. On April 13, 2018 Plaintiff was discharged from the rehabilitation center "after notable functional progress." Tr. 13. On April 25, 2018, the Plaintiff presented for a follow up, during which she reported double vision related to left sided third palsy. *Id.* On examination, cranial nerves were grossly intact except in her left eye where she had a left third nerve palsy and had an evident aphasia, although she was able to answer simple questions. *Id.* On May 17, 2018,

the Plaintiff underwent left cranioplasty. *Id.* On May 19, 2018, examination at Methodist University Hospital revealed that the Plaintiff's "speech was mostly fluent with very mild expressive aphasia that was improved from prior examinations" and was "able to follow simple commands, had no pronator drift, and had full strength in all extremities." Tr. 870-903.

On June 21, 2018, a cervicocerebral angiogram showed no significant saccular aneurysm or regrowth. Tr. 1882-1959. During a follow-up on January 18, 2019, the Plaintiff's double vision was noted to be resolved and further examination revealed "intact cranial nerves, intact extraocular movements, spontaneous speech, and normal sensation." *Id.* An angiogram showed "no growth of the aneurysm with some evidence of continued healing." *Id.* Plaintiff was recommended to follow-up with angiography in five years.

On June 26, 2019, during the Plaintiff's initial assessment at Region One Mental Health, she did not show any neurological deficits and showed "appropriate speech." Tr. 1994-2048. During a follow-up on August 2, 2019, the Plaintiff further showed "normal motor activity, speech, orientation, concentration, attention span, memory, and reasoning. She was found to have average intelligence and good judgment, insight, and fund of knowledge." Tr. 14.

The Plaintiff was also diagnosed with major depressive disorder beginning on May 31, 2019 and was started on medication and referred to Region One, where she was evaluated on June 26, 2019. Tr. 1994-2025. She reported that she was depressed since her health problems occurred. Tr. 14. The examination revealed a depressed mood but that the Plaintiff exhibited "appropriate appearance, speech, and affect. There was no evidence of delusions or hallucinations." *Id.* On August 2, 2019, the Plaintiff again presented to Region One and was then prescribed Zoloft. On September 6, 2019, the Plaintiff returned to Region One and reported "periods of dysphoria and difficulty sleeping" though her mental status was "within normal limits" and was noted to be "improving on medication." The dosage of Zoloft was increased, and she was prescribed Trazodone to help with sleeping. *Id.*

Medical records indicate that at all relevant times, the Plaintiff was classified as obese and suggests that the Plaintiff's obesity contributes to her severe impairments of hypertension and diabetes. Tr. 14. The ALJ noted that he has "considered the effect of obesity on the Plaintiff's functioning and finds that is constitutes a severe impairment." *Id.*

On March 20, 2018, the Plaintiff filed for disability-based SSI benefits. Tr. 163. The Disability Determination Services ("DDS") obtained two consultative examinations in August 2018 and determined that the Plaintiff was not disabled. Tr. 66-79. DDS later affirmed its determination on reconsideration in December 2018. Tr. 81-89. Plaintiff testified at a hearing before the ALJ on September 23, 2019, with the presence of counsel. A vocational expert also testified at the hearing. The ALJ subsequently issued a decision on November 26, 2019 and found that the Plaintiff was not disabled from March 18, 2018 through the date of the decision. Tr. 21.

In his decision, the ALJ outlined his evaluation and analysis under the five-step sequential process.[1] *See* 20 C.F.R. § 416.920(a)(4). Of relevance here, the ALJ found at Step 2 that Plaintiff had hypertension, diabetes mellitus, obesity, a subarachnoid hemorrhage, and depression that were "severe." Tr. 12. At Step 4, the ALJ found that the Plaintiff had a residual functional capacity ("RFC") to perform "light work" as defined in 20 CFR 416.967(b), except she can never climb ladders, ropes, or scaffolds. The Plaintiff can occasionally climb ramps and stairs and occasionally stoop. She can perform only simple repetitive tasks, by which it is meant that the Plaintiff can understand, remember, and carry out simple tasks. The Plaintiff can have only occasional interaction with the public, coworkers, and supervisors. She cannot perform fast production pace jobs, meaning jobs with numeric goals to be performed within a strict guideline. The Plaintiff can perform jobs requiring only occasional decision making and the job should have no more than

---

[1] At Step 1, the ALJ found that Plaintiff did not engage in substantial gainful activity on or after March 20, 2018, the application date. Tr. 11. At Step 3, the ALJ determined that the Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings)." Tr. 15. There was no evaluation under Step 5, as the Plaintiff did not have past relevant work. Tr. 19-20.

occasional changes in the work place or work processes. T. 17. Ultimately, the ALJ found that the Plaintiff was not disabled. *Id.* On April 6, 2020, the Appeals Council denied Plaintiff' request for review of the ALJ's decision. Tr. 1.

## Law and Analysis

The court's review of the Commissioner's final decision that the Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Graves v. Colvin*, 837 F.3d 589, 591-92 (5th Cir. 2016); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

The Plaintiff argues that the ALJ did not adequately consider the evidence in the record and that the RFC assessment is not supported by substantial evidence. Pl. B. at 4.[2] In essence, the Plaintiff argues that the RFC assessment was incorrect as to three areas: (1) the residuals effects of the subarachnoid hemorrhage; (2) the "dismissal" of depression as an impairment; and (3) the exclusion of diplopia in the RFC assessment. Taking these issues in turn, the undersigned finds that the arguments are without merit.

---

[2] Plaintiff argues that "[t]he ALJ's decision is not supported by substantial evidence because of the "conspicuous absence of credible choices" supporting the ALJ's analysis of Plaintiff's medical records and that the ALJ "failed to properly evaluate the Plaintiff's condition in chronological order from the beginning" and "take into account that the Plaintiff's psychological impairments would have prevented her from engaging in gainful activity since her application date." Pl. B. at 4.

First, the Plaintiff states that the ALJ "bizarrely found subarachnoid hemorrhage with residual effects to be a severe impairment and then simultaneously found that the residual effects were largely resolved with 12 months." *Id.* at 5. In support of her argument, the Plaintiff lists partial examination notes from the record but provides no explanation as to why the residual effects cause greater limitations than those reflected in the ALJ's RFC assessment. Moreover, the Plaintiff's argument is contradicted by the record. The ALJ *did* consider the Plaintiff's mental deficits associated with her subarachnoid hemorrhage and found the condition was severe in Step 2. Tr. 12. As such, the ALJ assigned the Plaintiff to "light work." Tr. 17. This finding is supported by substantial evidence in the record which indicates that the Plaintiff's conditions with regard to the subarachnoid hemorrhage improved through treatment and there was no evidence of regression. Tr. 18-19.

Second, the Plaintiff argues that the ALJ dismissed the Plaintiff's psychological impairments "because her depression [d]diagnosis did not occur until May 31, 2019" and "could have at least considered Plaintiff for a closed period of benefits from the Application until he found [the Plaintiff's mental health] improvement occurred." Pl. Br. 6-7. Again, the record shows that the ALJ *did* consider the Plaintiff's depression and determined that it was severe at Step 2 and appropriately limited the Plaintiff to only occasional interaction with the public, coworkers, and supervisors. Tr. 17. The ALJ made this assessment, while acknowledging that the Plaintiff's depression improved with medication and treatment. T. 16, 17-18. The Plaintiff does not provide any evidence or legal arguments to the contrary.

Lastly, the Plaintiff argues that the ALJ erred in failing to account for the Plaintiff's "continued vision impairments" and cites to a single line in the consultative examiner's notes. Pl. Br. at 7. This characterization is also unsupported by the record. The record shows that while the Plaintiff initially complained of diplopia, an ophthalmological examination in April 2018 revealed that the Plaintiff had 20/20 vision and the diplopia was resolved by January 18, 2019, falling short

of the 12-month duration requirement to qualify as a disabling impairment. Tr. 251-868; *see* also 20 C.F.R. §§ 416.905, 416.909. As such, substantial evidence supports the ALJ's determination that the Plaintiff's diplopia was "non-severe" and would not impair the Plaintiff's ability to work. Tr. 15.

Given the above, it is the report and recommendation of the undersigned that the Commissioner's decision should be affirmed.

The Plaintiff is referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The Plaintiff is warned any such objections are required to be in writing and must be filed within fourteen (14) days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings.

Respectfully submitted this 27th day of May, 2021.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**